# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CHRISTOPHER S. PINKSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-CV-539-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION

This action seeks judicial review of the Commissioner of Social Security's decision denying Plaintiff Christopher S. Pinkston's applications for Social Security benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found on behalf of the Commissioner that Plaintiff had multiple severe impairments, but retained the residual functional capacity ("RFC") to perform past relevant work as a certified nurse's aide and expediter/chain planner.

After carefully reviewing the record and the parties' briefs, the Court finds substantial record evidence supports the ALJ's opinion. The ALJ's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary. Plaintiff filed the pending application on December 21, 2010, alleging a disability period of August 31, 2009, through September 30, 2011. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. On June 1, 2012, the ALJ held a hearing, and then issued a decision on June 13, 2012, finding

Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on April 26, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and is now eligible for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Standard of Review**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's denial of disability benefits is limited to determining whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the ALJ's decision. *Id.* In making this assessment, the court considers evidence that detracts from the ALJ's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the ALJ's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the ALJ's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the ALJ to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). As discussed later, this five-step sequence is altered when substance abuse is at issue.

simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

Plaintiff argues that the ALJ erred by: (1) finding that drug and alcohol abuse were material contributing factors to Plaintiff's disability; and (2) formulating Plaintiff's RFC without considering: (a) all of Plaintiff's limitations, (b) Plaintiff's low GAF scores, and (c) Plaintiff's subjective complaints. These arguments are without merit.

**I.      The ALJ properly found that drug and alcohol abuse were material contributing factors to Plaintiff's disability.**

Plaintiff first argues that the ALJ improperly found Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability. If the ALJ finds that the claimant is disabled but also finds evidence of substance abuse, then he must determine what limitations would remain if the claimant's substance abuse ceased. *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)). If the claimant's remaining limitations would not be disabling, then the addiction or alcoholism is a "contributing factor material to the determination of disability," and the claimant is not disabled under the Act. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Here, the ALJ determined that without Plaintiff's substance abuse, Plaintiff still had severe physical impairments resulting from his obesity and diabetes mellitus but only mild mental limitations. R. at 16–17 (citing 20 C.F.R. § 404.1520a(c)(3)).[2] These remaining limitations were not disabling, so Plaintiff's substance abuse was a "contributing factor material to the determination of disability." R. at 18–20.

---

[2] Although a Social Security Ruling was recently handed down which pertains specifically to evaluating diabetes mellitus, the ruling was not effective until after Plaintiff's hearing and the ALJ's decision. *See* SSR 14-2p, 2014 WL 2472008 (June 2, 2014).

3

In finding that Plaintiff was not disabled absent his substance abuse, the ALJ relied on substantial record evidence culled from Plaintiff's sober periods. Plaintiff testified that he had been sober for two years prior to his hearing date of June 1, 2012. R. at 36–37, and he testified to having some social normalcy during that time. He intended on returning to school, suggesting that he felt he could interact with his fellow classmates and professors appropriately and that he was capable of concentrating over an extended period. R. at 219, 250. He returned to work in October 2011, where he found it "easier to communicate with people" and be "fairly able to handle [his] duties." R. at 34.

Plaintiff's medical examinations revealed no problems with his memory, cognition, attention, concentration, or behavior. For example, treating physician E. Michael Young, M.D. ("Dr. Young") reported: "'Mood is doing good.' Denies mania or depression. Has a new job. Good att/conc. Sleep is ok. No complaints." R. at 311. Dr. Young wrote very similar reports after other visits. *See* R. at 222–40, 292–99, 315–19. This substantial evidence validates the ALJ's finding that absent substance use, Plaintiff is not disabled. *See Vester v. Barnhart*, 416 F.3d 886, 890 (8th Cir. 2005) (affirming a finding that substance abuse was a contributing material factor where "there is some evidence in the record of [the claimant's] improved condition during other periods of sobriety," including reports that she was "doing well" and "feeling good").[3]

---

[3] Plaintiff argues that the determination of whether substance abuse was a contributing material factor to his disability "must be established by medical evidence" (Doc. 9, at 12). Even ignoring that the record contains medical evidence—i.e., Dr. Young's examinations of Plaintiff during his sober periods—Plaintiff provides no legal authority for his proposition. *See Vester*, 416 F.3d at 891 ("[I]t seems within the ken of the ALJ to make a factual finding that the claimant is able to work when she is not abusing alcohol. This sort of judgment, based largely on historical facts, strikes us as different in kind from that required when a claimant presents a set of medical problems, and the ALJ must make a predictive judgment as to the claimant's ability to work in light of a given medical condition.").

## II. The RFC formulation is supported by substantial record evidence.

Plaintiff next argues that the ALJ's RFC formulation is flawed because: (1) its limitations do not incorporate Plaintiff's severe diabetes mellitus or non-severe affective disorder; (2) the ALJ ignored Plaintiff's GAF scores; and (3) the ALJ did not properly assess Plaintiff's credibility. As explained below, the ALJ's RFC formulation was proper.

### A. The RFC formulation properly reflects all of Plaintiff's impairments.

Plaintiff argues that the ALJ should have secured medical evidence on how Plaintiff's diabetes mellitus, a severe impairment, affected his RFC. A claimant's RFC is fundamentally a "medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). If an impairment can be controlled by treatment or medication, then it cannot be considered disabling and the ALJ does not need to include it in her RFC. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993).

Here, Allison E. Lowderman, APRN FNP ("Nurse Lowderman") opined, "The diabetes mellitus began in 2010. The problem is stable. . . . [Plaintiff] has been managed with oral medications." R. at 301. Plaintiff also managed his diabetes through his diet. R. at 304. The ALJ explicitly relied on this medical evidence in determining that the diabetes, while severe, was controlled and so did not affect Plaintiff's RFC to perform medium-work activities. R. at 18–19.

In arguing that the ALJ failed to further develop the record and obtain a consultative examination on Plaintiff's limitations resulting from his diabetes, Plaintiff confuses his burden at Step Four to demonstrate RFC with Defendant's duty to develop the record. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591–92 (8th Cir. 2004). The ALJ's duty to develop the record is a narrow duty. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's

decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir.1994). Remand to more fully develop the record is generally required only when the record is patently deficient or inconsistent.[4]

Here, medical evidence amply demonstrates that oral medications helped control Plaintiff's severe impairments. This evidence is not patently deficient, nor does it indicate that more examinations were needed. Plaintiff did not introduce any evidence to contradict Nurse Lowderman's opinions; in fact, as the ALJ noted, Plaintiff failed to complete and return a function report so that a state agency psychological consultant could fully assess Plaintiff's mental abilities. R. at 16, 250. Thus, substantial record evidence supports the ALJ's holding that Plaintiff did not carry his burden, and his decision not to include any limitations from the diabetes in Plaintiff's RFC determination.

Plaintiff also argues that his RFC failed to account for his non-severe limitations. In discussing Plaintiff's non-severe limitations brought on by affective disorder and substance abuse, the ALJ cited Dr. Young's records to find that Plaintiff's symptoms subsided during periods of sobriety. R. at 19 (citing R. at 280–300, 318). Substantial record evidence thus supports the ALJ's finding that Plaintiff's RFC formulation did not need to account for any of Plaintiff's physical limitations.

---

[4] *Compare, e.g.*, *Cox v. Apfel*, 160 F.3d 1203, 1209–10 (8th Cir. 1998) (faulting the ALJ for not fully developing the record where "it is obvious that the record did not contain all the relevant medical records, including the last seventeen months of records from Cox's personal physician charged with her pain management") *and Godoua v. Colvin*, No. 13-2914, 2014 WL 1850776, at *2 (8th Cir. May 9, 2014) (per curiam) (unpublished) (remanding for failure to develop a record reflecting *diagnoses* of anxiety and depression but no related examination findings, because the ALJ had insufficient evidence to assess the *extent* of the claimant's mental problems), *with Mitchell v. Shalala*, 25 F.3d 712 (8th Cir. 1994) (affirming the ALJ's denial of benefits even though the ALJ did not follow up on the extent of the claimant's education, because there were "no inconsistencies in the record that might have alerted the ALJ that he should have pursued Mr. Mitchell's educational level further") *and Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

### B. The ALJ properly discredited Plaintiff's GAF scores.

Plaintiff next argues that the GAF[5] scores he attained during his periods of sobriety were so low that they detract wholly from the evidence supporting the ALJ's RFC formulation. Additionally, he contends the ALJ committed procedural error by not discussing the GAF scores.

First, an ALJ "necessarily considered" a claimant's GAF scores if the ALJ considered the underlying records containing the GAF scores. *Bradley v. Astrue*, 528 F.3d 1113, 1115 n.3 (8th Cir. 2008). Here, the ALJ discussed all medical opinions containing GAF scores, R. at 17, 19, thus the Court presumes that the ALJ considered the scores.

Second, the ALJ was within his discretion to give Plaintiff's GAF scores—often 50 and twice as low as 40—little weight. Low GAF scores do not establish disability per se. *See, e.g.*, *Partee v. Astrue*, 638 F.3d 860, 862–63 (8th Cir. 2011) (upholding a denial of benefits where some of the claimant's GAF scores were in the 30s). Rather, an ALJ "may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010). Here, portions of the record undermine the GAF scores to the extent they suggest Plaintiff is unable to work. A single doctor assigned all of the GAF scores at issue: Dr. Young. R. at 220, 226, 232, 284, 290, 293, 296, 319, 322. Contemporaneously with these GAF scores, Dr. Young made specific examination findings tending to show that Plaintiff had good insight and judgment. R. at 229, 238, 240, 312. For example, in the same visit that Dr. Young assigned Plaintiff a GAF score of 40, he noted that Plaintiff denied mania, had no psychosis, had no suicidal or homicidal ideations, and reported that "I feel much better now, more even, less depressed." R. at 318–19. These are inconsistent

---

[5] The Global Assessment of Functioning ("GAF") is a numeric scale ranging from 0 to 100, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32–34 (4th ed. rev. 2000).

with a GAF score of 40. Discussing Dr. Young's opinions as a whole, the ALJ found Dr. Young's examinations findings to be the best indicator of Plaintiff's functioning, thereby implicitly rejecting the inconsistent GAF scores. R. at 16–17; *see* R. at 222–40, 292–99, 311–19. Therefore, substantial record evidence supports the ALJ's formulation of Plaintiff's mental RFC.

### C. The ALJ properly performed a credibility analysis on Plaintiff.

Finally, Plaintiff argues that the ALJ rejected Plaintiff's testimony without sufficiently analyzing his credibility. In particular, Plaintiff argues the ALJ should have developed the record further to better assess his credibility.

To determine a claimant's RFC, the ALJ must first determine his credibility. *Ellis v. Barnhart*, 392 F.3d 988, 995–96 (8th Cir. 2005). There are several grounds for discounting a claimant's credibility, including acceptance of unemployment benefits, *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (holding that the ALJ can use the receipt of unemployment benefits to negate the claimant's credibility unless "there is no other evidence to detract from the claimant's credibility"), contradictory, objective medical evidence, *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996), and gaps in treatment for the alleged impairment, *see Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008). The court must defer to the ALJ's credibility findings "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Here, the ALJ did not fully credit Plaintiff's subjective testimony for several valid reasons. First, Plaintiff received unemployment benefits in 2009, 2010, and 2011, all years during which he alleged that he was disabled. R. at 92–93. Second, Plaintiff demonstrated significant improvement following his alleged onset date and during his periods of sobriety, telling Dr. Young that he was doing "well," "ok," "good," and "great." R. at 225, 231, 234, 292,

8

315.  After recovery from a short relapse, Plaintiff reported feeling "much better now, more even, less depressed."  R. at 318.  Third, Plaintiff's severe physical impairments were controlled by oral medication.  R. at 301, 304.  Fourth, objective medical evidence contradicted Plaintiff's self-reports, showing that Plaintiff could relate adequately with his psychiatrist and that he had no memory or cognition problems.  R. at 220–35, 287–99, 312–22.

Fifth, the evidence indicates that Plaintiff did not seek treatment until twelve months after his onset date.  R. at 14.  Plaintiff has not explained his failure to seek treatment during this time.  The ALJ rightly saw this gap evidence as undermining Plaintiff's credibility.  *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due in part to an "absence of hospitalizations . . . , limited treatment of symptoms, [and] failure to diligently seek medical care").  All of the ALJ's reasons rested upon substantial record evidence to support his rejection of Plaintiff's subjective complaints of mental impairments, so the Court must defer to his credibility findings.

Plaintiff argues that Defendant had the responsibility to fill this gap by "record[ing] and obtain[ing] sufficient medical evidence about Plaintiff's impairments," but again any failure to adduce evidence falls on Plaintiff (Doc. 15, at 6).   This is not a situation where Plaintiff testified that he sought medical treatment during the year following his onset date but failed to provide the information.  The record already contains substantial medical evidence concerning Defendant's mental health.  Thus, the ALJ had no indication that the record was incomplete or deficient regarding gaps in treatment, and so had no duty to investigate Plaintiff's claims for him.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

9

**IT IS SO ORDERED.**

Date: June 30, 2014           /s/ Greg Kays
                              GREG KAYS, CHIEF JUDGE
                              UNITED STATES DISTRICT COURT